UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

United States of America,

        Plaintiff,

   vs.                          REPORT AND RECOMMENDATION

Richard Charles Person, and
Ronnielynn Marie Keezer,

        Defendants.        Crim. 06-09 (01-02)(RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

    This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant Ronnielynn Marie Keezer ("Keezer"):

        1.    Keezer's Motion to Suppress Evidence Obtained as a Result of Search and Seizure.

        2.    Keezer's Motion to Dismiss Indictment on Grounds of Insufficient Allegations.

        3.    Keezer's Motion to Quash Arrest and to Suppress Evidence Illegally Seized.

    4.      Keezer's Motion to Suppress Evidence Derived from
            Electronic Surveillance.

A Hearing on the Motions was conducted on February 16, 2006, at which time, the

Defendant Richard Charles Person ("Person") appeared personally, and by Virginia

G. Villa, Assistant Federal Defender; Keezer appeared personally, and by Robert M.

Christensen, Esq.; and the Government appeared by Clifford B. Wardlaw, Assistant

United States Attorney.

    For reasons which follow, we recommend that each of the Keezer's Motions be

denied.

## II.  Factual Background

    The Defendants are each charged with one Count of conspiracy with intent to

distribute crack cocaine, in violation of Title 21 U.S.C. §§841(b)(1)(A), and 846; two

Counts of aiding and abetting the possession with intent to distribute crack cocaine,

in violation of Title 21 U.S.C. §§841(a)(1) and (b)(1)(A), and Title 18 U.S.C. §2; one

Count of possession of a firearm during a drug trafficking crime, in violation of Title

18 U.S.C. §§924(c)(1)(A)(i), (c)(1)(B)(i), and 2; and one Count of possession of a

firearm with an obliterated serial number, in violation of Title 18 U.S.C. §922(k).  The

events which gave rise to the conspiracy charge are alleged to have taken place during

the time period from January 1, 2005, until October 13, 2005, while the events which gave rise to aiding and abetting possession with intent to distribute charges are alleged to have taken place on January 7, and October 13, 2005, respectively; and the events which gave rise to the possession of a firearm during a drug trafficking crime, and the possession of a firearm with an obliterated serial number charges, are alleged to have occurred on January 7, 2005.  All of the events are alleged to have occurred in this State and District.

Keezer has moved to dismiss the Indictment against her, to quash her arrest, to suppress evidence obtained through electronic surveillance, and to suppress evidence obtained during the execution of two separate Search Warrants.  Keezer's Motion to Suppress Evidence Obtained as a Result of Search and Seizure asks us to review two Search Warrants so as to determine if the Warrants were supported by probable cause, or contained any other fatal defects.  No testimony was adduced at the Hearing on the Defendants' Motions, and therefore, we limit our consideration to the "four corners" of the Search Warrants, and their supporting papers.

III.  Discussion

A.    Keezer's Motion to Dismiss for Insufficient Evidence.

Keezer's Motion to Dismiss the Indictment is based upon her assertion that the issuance of the Indictment, by the Grand Jury, was not based upon competent evidence, but upon opinion evidence which, she contends, is inadequate to sustain the Indictment.  However, Keezer has provided us with no basis to doubt the veracity of the Grand Jury proceedings and, in any event, the established rule in our Circuit is that "a grand jury may indict on whatever evidence is laid before it, even evidence that would be inadmissible at trial."  United States v. Wilkinson, 124 F.3d 971, 977 (8th Cir. 1997), citing United States v. Levine, 700 F.2d 1176, 1179 (8th Cir. 1983); see United States v. Johnson,  615 F.2d 1125, 1127 (5th Cir. 1980)("Indictments may not be challenged merely upon the ground that there was inadequate or incompetent evidence before the Grand Jury."), citing Costello v. United States, 350 U.S. 359, 363 (1956)(Fifth Amendment does not require that a showing that a Grand Jury Indictment is based on competent and adequate evidence prior to proceeding to the Trial on its merits.).  Therefore, we recommend that Keezer's Motion to Dismiss the Indictment be denied.

   B.   <u>Keezer's Motion to Suppress Evidence Obtained as a Result of Search and Seizure</u>.

   1.   <u>Standard of Review</u>.   In the issuance of a Search Warrant, the Fourth Amendment dictates that an impartial, neutral, and detached Judicial Officer, will assess the underlying factual circumstances so as to ascertain whether probable cause exists to conduct a search, or to seize incriminating evidence, the instrumentalities or fruits of a crime, or contraband.  <u>Warden v. Hayden</u>, 387 U.S. 294 (1967); <u>United States v. Johnson</u>, 64 F.3d 1120, 1126 (8th Cir. 1995), cert. denied, 516 U.S. 1139 (1996).  In order to find probable cause, it must be demonstrated that, in light of all the circumstances set forth in the supporting Affidavit, there is a fair probability that contraband, or evidence of a crime, will be found in a particular, designated place.  <u>United States v. Gladney</u>, 48 F.3d 309, 313 (8th Cir. 1995); <u>United States v. Tagbering</u>, 985 F.2d 946, 949 (8th Cir. 1993).  For these purposes, probable cause is "a fluid concept, turning on the assessment of probabilities in particular factual contexts, not readily, or even usefully, reduced to a neat set of legal rules." <u>Illinois v. Gates</u>, 462 U.S. 213, 232 (1983); see also, <u>Ornelas v. United States</u>, supra at 695.

"Search warrant '[a]pplications and affidavits should be read with common sense and not in a grudging hyper technical fashion.'" United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002), quoting United States v. Goodman, 165 F.3d 610, 613 (8th Cir. 1999), cert. denied, 527 U.S. 1030 (1999).   In conducting such an examination, the Court should review the Affidavits as a whole, and not on a paragraph-by-paragraph basis. United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991); Technical Ordnance, Inc. v. United States, 244 F.3d 641, 649 (8th Cir. 2001), cert. denied, 534 U.S. 1084 (2002).  Moreover, the reviewing Court must not engage in a de novo review but, rather, should accord great deference to the decision of the Judicial Officer who issued the Warrant.  United States v. Maxim, 55 F.3d 394, 397 (8th Cir. 1995), cert. denied, 516 U.S. 903 (1995); United States v. Curry, 911 F.2d 72, 75 (8th Cir. 1990), cert. denied, 498 U.S. 1094 (1991).  This mandated deference to the determination of the issuing Judicial Officer is consistent with the Fourth Amendment's sound preference for searches that are conducted pursuant to Warrants. Illinois v. Gates, supra at 236.

Moreover, "[i]t is axiomatic that probable cause must exist at the time of the search and not merely at sometime earlier." United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005); see, United States v. Ozar, 50 F.3d 1440, 1446 (8th Cir. 1995).

- 6 -

Therefore, a lapse of time, between the observations of a witness and the issuance of a Search Warrant, like a delay in executing a Search Warrant, "may make probable cause fatally stale."  United States v. Maxim, supra at 397 [quotations omitted].

"There is no bright-line test for determining when information is stale," and the passage of time, alone, is "not always the controlling factor," as other factors, such as "the nature of the criminal activity involved and the kind of property subject to the search," are also relevant to the inquiry.  Id., quoting United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993); United States v. Rugh, 968 F.2d 750, 754 (8th Cir. 1992); see also, United States v. Kennedy, supra at 1141; United States v. Chrobak, 289 F.3d 1043, 1046 (8th Cir. 2002).  As but one example, when the Affidavit alleges an "ongoing continuous criminal enterprise, the passage of time between the receipt of information and the search becomes less critical in assessing probable cause." United States v. Rugh, supra at 754.  Therefore, in our analysis, we must not "simply count[] the number of days between the occurrence of the facts supplied and the issuance of the affidavit," but must consider any passage of time "in the context of a specific case and the nature of the crime under investigation."  United States v. Maxim, supra at 397, quoting United States v. Koelling, supra at 822.  Furthermore, "'where recent information corroborates otherwise stale information, probable cause

- 7 -

may be found.'"   United States v. Ozar, supra at 1446, quoting United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990), cert. denied, 498 U.S. 1031 (1991).

      2.   Legal Analysis.  Keezer has moved to suppress evidence that was obtained during two warranted searches at the residence of Keezer, and Person.  The first Search Warrant was executed on January 7, 2005, and the second Search Warrant was executed on October 13, 2005.  We address each of these warranted searches, in turn.

      a.   The Search Warrant of January 7, 2005.  On January 7, 2004, a Search Warrant was executed at the residence of Person and Keezer, which is located at 36649 Loon Drive, in White Earth, Minnesota.  The Search Warrant was signed by a Minnesota State Court Judge, and it authorized a search for controlled substances; raw materials and equipment used to compound, manufacture, process, or deliver controlled substances; primary containers for such raw materials; items to show constructive possession of controlled substances; and cash from the proceeds of a controlled drug transaction.

In support of the Search Warrant Application, Chris Benson ("Benson"), who is a Narcotics Investigator for the White Earth Police Department, submitted an Affidavit which set forth the reasons which caused him to suspect that the contraband

would be uncovered in Keezer's residence. Benson averred that he had contacted a confidential informant ("CI"), within the 72 hour time period that preceded the Search Warrant Application, and that the CI had agreed to participate in a controlled drug transaction at the residence of Person and Keezer. According to Benson, the CI had previously cooperated with law enforcement in the conduct of other controlled drug transactions.

Benson averred that, after the CI agreed to participate in the controlled transaction, Benson met with the CI, searched his person, then attached an electronic surveillance transmitter to the CI. Benson provided the CI with buy money, with pre-recorded serial numbers, and made copies of the currency that was provided to the CI. The CI proceeded to the residence of Keezer and Person, and knocked on the door. The CI was invited into the residence by Cody James Eaglefeather ("Eaglefeather"). Eaglefeather and the CI spoke for a short period of time, and then the CI purchased one-half (½) of a gram of cocaine from Eaglefeather for $50.00. The CI reported that while he or she was inside of the residence, the CI observed Person come out of a bedroom, and that he also heard Keezer inside of the bedroom, putting a baby to sleep.

Following the transaction, the CI returned to a designated rendezvous point, where he or she met with Benson. The CI provided Benson with the substance that

had been purchased, which Benson averred tested positive for cocaine base. Benson further attested that, during his conversation with the CI, the CI reported that he purchased the crack cocaine from Eaglefeather, at Person's residence, and that Person, Keezer, their baby, and Eaglefeather, were at the residence. The CI further reported that an individual, who he identified as Donny St. Clair ("St. Clair"), had been at the residence earlier, but that he was unsure whether St. Clair was inside of the house at the time of the transaction.

On this showing, we find that there was adequate probable cause to support the issuance of the Search Warrant for Keezer's residence. At the outset, we recognize that some of the information, which is contained in the Affidavit, was supplied by the CI. When probable cause for a Search Warrant is based upon information provided by an informant, "'a key issue is whether that information is reliable.'" United States v. Koons, 300 F.3d 985, 993 (8th Cir. 2002), quoting United States v. Fulgham, 143 F.3d 399, 401 (8th Cir. 1998); see also, United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)("[T]he informant's reliability, veracity, and basis of knowledge are relevant considerations -- but not independent, essential elements -- in finding probable cause."). As our Court of Appeals has stated:

> In [Illinois v.] Gates, the Supreme Court explained that an informant's reliability and basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." * * * 462 U.S. at 233, 103 S.Ct. at 2329.

United States v. Olson, 21 F.3d 847, 850 (8th Cir. 1995).

As a result, "'an informant's basis of knowledge [is] an important consideration, but not a rigid requirement, in the probable cause determination.'" Id., citing United States v. Anderson, 933 F.2d 612, 615 (8th Cir. 1991).

Consequently, the "core question" is whether the information, which was provided by the informant, was reliable. See, United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."). Moreover, "[t]he statements of a reliable confidential informant are themselves sufficient to support probable cause." United States v. Wright, 145 F.3d 972, 975 (8th Cir. 1998), cert. denied, 525 U.S. 919 (1998).  In turn, an informant is deemed reliable when his statements are corroborated by independent evidence. See, United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003) ("[C]orroboration of minor, innocent

details may support finding of probable cause."), citing <u>United States v. Tyler</u>, 238 F.3d 1036, 1039 (8th Cir. 2001); see also, <u>United States v. Koons</u>, supra at 993 ("'Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.'"), quoting <u>United States v. Fulgham</u>, supra at 401; <u>United States v. Formaro</u>, 152 F.3d 768, 770 (8th Cir. 1998) ("[C]orroboration of the confidential informant's information by independent investigation is an important factor in the calculus of probable cause.").

Here, we find that Benson reasonably relied upon the information provided by the CI because the CI had cooperated with law enforcement in the past, see, <u>United States v. Leppert</u>, 408 F.3d 1039, 1041 (8th Cir. 2005)(reliability of informant's tip was established where informant had provided reliable information in the past, and at least some of the tip was corroborated by an independent investigation), and because the information, that was provided by the CI, was confirmed through Benson's surveillance of the controlled drug transaction, and Benson's recovery of drugs from the CI, following that transaction.  See, <u>United States v. Rivera</u>, 410 F.3d 998, 1002 (8th Cir. 2005)(informant's credibility was established where his representations were

corroborated by officer surveillance and the recovery of narcotics from the informant following a controlled drug transaction).

As such, we concur with the determination of the issuing Judicial Officer, that probable cause was present to believe that evidence related to the distribution of controlled substances was being concealed within Keezer's residence.  See, <u>United States v. Smith</u>, 266 F.3d 902, 905 (8th Cir. 2001)(finding that an Affidavit which detailed an officer's surveillance of controlled drug transactions provided probable cause to support a Search Warrant).  Moreover, considering Benson's averment, that the controlled drug transaction had occurred within seventy-two (72) hours from the time that the Search Warrant Application was presented to issuing Judicial Officer, and that the Search Warrant appears to have been executed on the same day that it was issued,[1] we find that the probable cause to support the Warrant was sufficiently fresh, despite the disposable nature of drug evidence.

      b.    <u>The Search Warrant of October 13, 2005</u>.  On October 13, 2005, a second Search Warrant was executed at the residence of Person and Keezer,

---

[1]The Return that was submitted by Benson records that the Search Warrant was executed on January 7, 2004, which would be one year before the Search Warrant was issued.  See, <u>Government's Exhibit 1</u>.  Neither party has addressed this discrepancy, which we assume to be a typographical error.

which was located at 2617 140th Avenue, in Mahnomen, Minnesota.  The Search

Warrant was issued by a State Court Judge, and it authorized a search for controlled

substances;  primary  containers  used  to  store  controlled  substances;  dispensing

equipment and paraphernalia concerning controlled substances; records of drug related

activities; indicia of occupancy; firearms, and ammunition; authorization to answer

telephones during the conduct of the search; electronic equipment and computers;

profits and proceeds from narcotics transactions; authority to photograph items in the

residence; and photographs and other depictions of drug related activities.  See,

Government Exhibit 2.  The Search Warrant also authorized an unannounced entry,

in order to protect officer safety, and to prevent the destruction of evidence.[2]

In support of the Search Warrant Application, Jason Wambach ("Wambach"),

who is a detective with a joint local-Federal task force assigned to investigate gang,

gun, and drug crimes, and a Deputy Sheriff with the Mahnomen County, submitted

an Affidavit which set forth the reasons which caused him to suspect that contraband

would be uncovered in Keezer's residence.  According to Wambach, he was advised

---

[2]While the Search Warrant also authorized a nighttime search, the Return
indicates that the Search was, in fact, executed at 7:00 o'clock a.m., which is
considered a "daytime" search under Rule 41(a)(2)(B), Federal Rules of Criminal
Procedure.

by a Confidential Informant ("CI-2"), on October 12, 2005, that Person and Keezer had been selling crack cocaine from their residence, which he described as a white trailer with a brown attached porch; that Keezer and Person's residence was located at 2617 140th Avenue, in Mahnomen, Minnesota; that he had been to the residence on multiple occasions; and that several small children lived at the residence.

Wambach further attested that CI-2 had informed him that, on at least one occasion within the seventy-two (72) hours that preceded the presentment of the Search Warrant Application, he or she had personally observed a large amount of crack cocaine inside of Keezer's, and Person's residence, and that the crack cocaine had been packaged into small amounts for distribution. CI-2 also reported that he or she had personally observed Person sell a quantity of crack cocaine from the residence within the seventy-two (72) hour time frame, and that he or she had observed a police scanner in the living room area of the residence. CI-2 further advised that he or she had observed several vehicles outside of the residence of Person and Keezer, including a black Chevrolet Suburban bearing a White Earth Reservation license plate number 11858. According to Wambach, a record check revealed that the vehicle was registered to Keezer.

Wambach also averred that CI-2 had advised him that Person often sells crack cocaine in White Earth, and the surrounding area, during the daytime, and that, when he does, he does not return to the residence until late in the evening.  According to CI-2, Person will sometimes store quantities of drugs and/or cash, outside of his residence on the surrounding premises.  Wambach averred that CI-2 had previously successfully cooperated with the Mahnomen County Sheriff's Department in the conduct of three (3) controlled narcotics transactions.

Wambach also attested that, on October 12, 2005, he spoke with Benson, who apprised Wambach of several pending narcotics investigations concerning Person, during the 2005 calendar year, in which Person allegedly sold crack cocaine in the White Earth area during the daytime hours.  Benson further advised Wambach of a Search Warrant, which had been executed in January of 2005, at the residence of Person and Keezer, which had uncovered approximately one (1) ounce of crack cocaine, and a loaded 12 gauge shotgun.  The firearm was discovered underneath a mattress in the bedroom that was occupied by Person and Keezer.  As a result of the evidence that was uncovered during the search, Keezer and Person were each charged in State Court with a Controlled Substance Sales Crime in the First Degree.  At the time of the Affidavit, those charges were still pending before the State Court.

Much like our review of the Search Warrant of January 7, 2005, we find that Wambach reasonably relied upon the information provided by CI-2, because CI-2 was known to the officers, see, United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005), quoting Florida v. J.L., 529 U.S. 266, 270 (2000)("[A] known informant * * * can be held responsible if her allegations turn out to be fabricated."); because CI-2 had successfully cooperated with law enforcement in the past, see, United States v. Wright, supra at 975 (informant's track record of cooperation with law enforcement established reliability); and because at least some of the information that was provided by CI-2 was corroborated through the record check, which showed that the vehicle described by CI-2 was registered to Keezer, and by the representations of Benson concerning the history of narcotics activities by Person, and the conduct of such activities in a residence occupied by Person and Keezer.  See, United States v. Leppert, supra at 1041 (reliability of informant's tip was established where informant had provided reliable information in the past, and at least some of the tip was corroborated by an independent investigation).

In addition, considering that CI-2's observations were communicated to Wambach within seventy-two (72) hours of the presentment of the Search Warrant Application, and that the Search Warrant was executed on the same day that it was

issued, we find that the probable cause was sufficiently fresh to support the Warrant. Moreover, based on Wambach's averments concerning the discovery of a loaded firearm, during the execution of the Search Warrant of January 7, 2005, and the readily disposable nature of drug evidence, we also find no error in the authorization, by the issuing Judicial Officer, for an unannounced entry.

c.    <u>Jurisdiction</u>.  Keezer has also urged that each of the Search Warrants were invalid because they were issued by State Judicial Officers, who did not have criminal jurisdiction to issue such Warrants for residences that were located within the boundaries of the White Earth Indian Reservation.  Specifically, Keezer argues that the 1990 Amendments to the Indian Civil Rights Act of 1968 ("ICRA"), <u>Title 25 U.S.C. §1301,et. seq</u>, repealed Public Law 280 ("P.L. 280"), Act of August 15, 1953, Chapter 505, 67 Stat. 588-90, and accordingly divested the State of Minnesota of criminal jurisdiction over residences that are located within the boundaries of the White Earth Reservation.  Keezer does not elaborate on her jurisdictional argument, nor does she cite to any authority for her position.  Instead, she relies on ICRA's statutory definition of "powers of self-government," which, in part, "means the inherent power of Indian tribes, hereby recognized and affirmed, to exercise criminal jurisdiction over all Indians."  See, <u>Title 25 U.S.C. §1301(2)</u>.

- 18 -

P.L. 280, was enacted in 1953, in an effort to alleviate lawlessness on certain

Indian Reservations.  Bryan v. Itasca County, 426 U.S. 373, 379 (1976).  In pertinent

part, the Act provides as follows:

> (a)   Each of the States or Territories listed in the following table shall have jurisdiction over offenses committed by or against Indians in the areas of Indian country listed opposite the name of the State or Territory to the same extent that such State or Territory has jurisdiction over offenses committed elsewhere within the State or Territory, and the criminal laws of such State or Territory shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory:
>
> *    *    *
>
> Minnesota .......... All Indian Country within the State except the Red Lake Reservation.

Title 18 U.S.C. §1162(a).

In 1968, Congress enacted ICRA, which repealed some portions of P.L. 280, see, e.g.,

Title 25 U.S.C. §1323(b)(repealing Section 7 of P.L. 280, which had given the consent

of the United States to any other State not having criminal or civil jurisdiction, to

assume such jurisdiction legislatively);[3] see also, Poodry v. Tonawanda Band of

_____

[3]As was clarified in the Historical and Statutory Note to Title 25 U.S.C. §1323, Section 7 of P.L. 280 was set out as a note under Title 28 U.S.C. §1360.  The provisions of Section 7 also appear in the note to Title 18 U.S.C. §1162.

Seneca Indians, 85 F.3d 874, 882 n. 10 (2nd Cir. 1996), cert. denied, 519 U.S. 1041 (1996), but which largely left the grant of jurisdictional authority in place.  Under the amended version of P.L. 280, a State could "retrocede" its previously acquired jurisdiction over an Indian tribe -- i.e., "return to the federal government * * * jurisdiction over criminal and/or civil matters previously granted to the state by Congress."  State v. Manypenny, 662 N.W.2d 183, 187 (Minn. App. 2003), aff'd, 682 N.W.2d 143 (Minn. 2004), cert. denied, 543 U.S. 981 (2004); see, Title 25 U.S.C. §1323(a).  To date, "Minnesota has not retroceded its authority over the White Earth reservation to the federal government."  Id.

With the exception of the Red Lake, Title 18 U.S.C. §1162 provides the State of Minnesota with broad criminal jurisdiction over offenses committed by Indians in Indian country.  State v. Stone, 572 N.W.2d 725, 728-29 (Minn. 1997); State v. Jones, 700 N.W.2d 556, 558-89 (Minn. App. 2005); State v. LaRose, 673 N.W.2d 157, 161 (Minn. App. 2003).[4]  As such, Minnesota State Courts have routinely exercised criminal jurisdiction over offenses committed by or against Indians on the White Earth

---

[4]In 1973, Minnesota retroceded its jurisdiction over the Bois Forte Reservation in Nett Lake.  Act of May 23, 1973, chapter 625, 1973 Minn. Laws 1500; see, State v. Stone, 572 N.W.2d 725, 729, n. 3 (Minn. 1997).  Accordingly Bois Forte is no longer subject to P.L. 280.

Reservation, see, e.g., State v. Parker, 2005 WL 3291811 at *2-3 (Minn. App., December 6, 2005); State v. Manypenny, supra, State v. Folstrom 331N.W.2d 231, 231 (Minn. 1983), including offenses related to the possession and distribution of controlled substances. See, e.g., State v. St. Clair, 560 N.W.2d 732, 734 (Minn. App. 1997); see also, State v. LaRose, supra at 164 (State had criminal jurisdiction to prosecute the defendant, who was a resident of the Leech Lake Reservation for possession of marijuana).[5]

As noted, Keezer has not provided any authority for her contention that the Congressional recognition of "the inherent authority of Indian tribes * * * to exercise criminal jurisdiction over all Indians," as contained in the 1990 Amendments to ICRA, see, Title 25 U.S.C. §1301(2), somehow abrogated the jurisdictional grant under Title 18 U.S.C. §1162, nor has our independent research uncovered any such

_____

[5]While P.L. 280 does not grant, to the State, jurisdiction over certain traffic regulations which have been deemed "civil/regulatory" in nature, see, State v. Stone, 572 N.W.2d 725, 728, 732 (Minn. 1997), see also, California v. Cabazon Band of Indians, 480 U.S. 202, 209 (1987), there has been no suggestion that the narcotics related activities, which were described in Search Warrant, were "civil/regulatory" in nature, as opposed to "prohibitory/criminal," and such a position is plainly without merit. See, State v. St. Clair, 560 N.W.2d 732, 734 (Minn. App. 1997); see also, State v. LaRose, 673 N.W.2d 157, 164 (Minn. App. 2003). Accordingly, the jurisdictional grant that is contained in P.L. 280 applies to the activities that are described in the Search Warrants.

authority.  On the contrary, even prior to the 1990 Amendment, P.L. 280 did not divest Tribal authorities of criminal jurisdiction over its own members, see, <u>Walker v. Rushing</u>, 898 F.2d 672, 675 (8th Cir. 1990), and it appears that the Amendment was a response to the United States Supreme Court's holding in <u>Duro v. Reina</u>, 495 U.S. 676, 694 (1990), that Indian Tribes did not have the inherent authority to punish Indians who were not tribal members in Tribal Courts.  See, <u>United States v. Lara</u>, 541 U.S. 193, 197-98 (2004).  Accordingly, considering the remaining viability of Title 18 U.S.C. §1162, see, <u>Campbell v. Sletten</u>, 1999 WL 1001668 at *2 n. 3 (8th Cir., November 4, 1999)(citing Section 1162 for the proposition that Minnesota criminal law is enforceable in the Prairie Island Indian Community), and that provision's express grant of criminal jurisdiction, we decline to read Title 25 U.S.C. §1301(2), as an abrogation of Minnesota State Court jurisdiction over criminal offenses by and against Indians on the White Earth Reservation.

Since we find that the Minnesota State Courts have criminal jurisdiction over crimes by and against Indians on the White Earth Reservation, we also find that each of the contested Search Warrants were appropriately issued by the State Court Judicial Officers.  Therefore, having found that each of the identified Search Warrants were

supported by probable cause, we recommend that Keezer's Motion to Suppress

Evidence of Search and Seizure be denied in its entirety.[6]

     C.    <u>Keezer's Motion to Quash Arrest and Suppress Evidence Illegally Seized</u>.

       Keezer's Motion seeks to quash her arrest on the ground that "the entire

record, including reliable hearsay, does not support a finding of probable cause to

believe that an offense has been committed and that the defendant had committed it."

<u>Docket Nos. 51 and 52</u>.  However, our review of the file discloses that Keezer was

arrested pursuant to a Bench Warrant that was issued by Magistrate Judge Mary Kay

Klein, on December 21, 2005, following a criminal Complaint, and supporting

Affidavit, and that a Preliminary Hearing was conducted, pursuant to Rule 5.1,

Federal Rules of Criminal Procedure, shortly after Keezer's arrest, in which

Magistrate Judge Arthur J. Boylan independently determined that probable cause was

present to believe that Keezer committed the offense of possession with intent to

---

    [6]Even if the information in the Search Warrants were insufficient to establish probable cause, we would be compelled, by the law of this Circuit, to find that the officers' reliance upon those Search Warrants was reasonable, because the Warrants were "not so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." <u>United States v. McNeil</u>, 184 F.3d 770, 775 (8th Cir. 1999), citing <u>United States v. Leon</u>, 468 U.S. 897, 922-23 (1984).  Accordingly, even if probable cause were lacking, we would still recommend that Keezer's Motion be denied.

distribute crack cocaine.  See, <u>Order of Detention dated December 30, 2005</u>, at pp. 1-2, <u>Docket No. 14</u>.   Keezer has not identified any error in the probable cause determinations of either Magistrate Judge, nor has she provided any reason why we should disregard those determinations.   Therefore, we recommend that Keezer's Motion to Quash Arrest and Suppress Evidence Illegally Seized be denied.[7]

> D.    <u>Keezer's Motion to Suppress Evidence Derived from Electronic Surveillance</u>.

Keezer's Motion urges that all electronic surveillance be suppressed under the Fourth Amendment, and Title 18 U.S.C. §2518(10)(a).  The Government has urged that we deny the Motion, as moot, since, aside from equipping the CI with a "wire" during the conduct of a controlled narcotics transaction, no electronic surveillance was employed in the investigation of Keezer.  Keezer's Motion does not articulate whether she intends her Motion to include the information that was obtained from the wire that had been placed on the CI, and Keezer made no record, at the

---

[7]Based on the representations of counsel at the Hearing, it appears that Keezer was also arrested, on State charges, on January 7, 2005, and again on October 13, 2005.  It is not clear from the Defendant's Motion whether he is seeking to quash those arrests, or by what authority we could quash an arrest that is based on State criminal violations.  In any event, the Government has represented that it does not intend to offer any evidence that was discovered pursuant to the State arrests, and therefore, to the extent that Keezer is challenging her arrests on State charges, we recommend that the Motion be denied, as moot.

Hearing, concerning this Motion, and particularly, Keezer failed to advise the Court

of whether the information, that had been obtained through the wire which had been

placed on the CI, was the subject of her Motion.

As is pertinent to the pending Motion, our Arraignment Order contained the

following language:

> With increasing regularity, the Court has witnessed the
> parties failure to join the issues attendant to a defendant's
> Motion to Suppress. Frequently, the hallways of the
> Courthouse are replete with potential witnesses who will
> only be called to testify if the Defendant, at the time of the
> Hearing, voices a particular concern about the manner in
> which a statement was taken, or in which a search was
> conducted. The interests of justice are not served by the
> needless expenditures of both time and money, that are
> occasioned by the failure of counsel to communicate. We
> take this means of assuring that the failure to communicate
> will not reoccur. We need not here specify the sanctions
> that will attend the party who should elect to disregard this
> effort at judicial efficiency. Suffice it to say that it is this
> Court's expectation that being forewarned will obviate any
> need to address the issue further.

Arraignment Order, at p.2, n.1, Docket No. 23.

Here, Keezer has failed to identify whether the information, which was obtained

through the placement of a wire on the CI, is encompassed within her Motion to

Suppress, or the specific grounds upon which the suppression of such information

would be appropriate, and no Record has been presented concerning the Motion.

Accordingly, based on the Government's representations that, aside from the wire that was placed on the CI, no electronic surveillance was employed in the investigation of the pending charges, we recommend that the Motion be denied, as moot. See, e.g., United States v. Mims, 812 F.2d 1068, 1074 (8th Cir. 1987)(On a Motion to Suppress telephonic interceptions, the defendant's failure to "assert what may have been wrong with the interceptions, or in fact, even what interceptions that he [was] concerned with," justified the District Court's decision to deny the Motion without the conduct of an evidentiary Hearing); citing United States v. Losing, 539 F.2d 1174, 1178 (8th Cir. 1976); see also, United States v. Starks, 193 F.R.D. 624, 628, 630 (D. Minn. 2000)(finding that the defendant's failure to "articulate any cogent reason" why any evidence or statements should be suppressed warranted denial of defendant's pretrial suppression Motions, as the factual circumstances were not evident from the defendant's filings); United States v. Quiroz, 57 F. Supp.2d 805, 823 (D. Minn. 1999).[8]

---

[8]Even assuming that the Motion was intended to encompass the information that was obtained from the wire, which had been placed on the CI, we find it highly unlikely that suppression would be warranted. Specifically, the agreement of a confidential informant to wear a wire, during the conduct of a controlled narcotics transaction, falls squarely within the ambit of Title 18 U.S.C. §2511(2)(c), which provides that, "it shall not be unlawful under this chapter for a person acting under the
(continued...)

NOW, THEREFORE, It is --

---

[8](...continued)
color of law to intercept a wire, oral, or electronic communication where * * * one of the parties to the communication has given prior consent to such communication." See, United States v. Santana, 895 F.2d 850, 853 (1st Cir. 1990); United States v. Glasco, 917 F.2d 797, 800 n. 4 (4th Cir. 1990), cert. denied, 499 U.S. 912 (1991); see also, United States v. Carona-Chavez, 328 F.3d 974, 979 (8th Cir. 2003)(inferring that an informant impliedly consented to a recorded telephone call, where the informant had consented to be wired for sound, during the conduct of a controlled drug transaction); United States v. Burford, 755 F. Supp. 607, 615 (S.D. N.Y. 1991).

Moreover, "Fourth Amendment rights are not violated when * * * conversations with government informants are electronically monitored by a government agent with the consent of the informant." Lewellen v. Raff, 843 F.2d 1103, 1116 (8th Cir. 1988), cert. denied, 489 U.S. 1033 (1989), quoting United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975); see, United States v. White, 401 U.S. 745, 753 (1971); Hoffa v. United States, 385 U.S. 293, (1966); Lopez v. United States, 373 U.S. 427 (1963). However, the Government bears the burden of proving consent, see, United States v. Carona-Chavez, supra at 978, and since no testimony, or other evidence, was presented on our Record, concerning the CI's consent to the electronic transmission, we decline to recommend suppression on that ground.

- 27 -

RECOMMENDED:

1.    That the Motion of Ronnielynn Keezer to Dismiss the Indictment [Docket No. 46] be denied.

2.    That the Motion of Ronnielynn Keezer to Suppress Evidence of Search and Seizure [Docket No. 41] be denied.

3.    That the Motion of Ronnielynn Keezer to Quash Arrest and Suppress Evidence Illegally Obtained [Docket Nos. 51 and 52] be denied.

4.    That the Motion of Ronnielynn Keezer to Suppress Evidence Derived from Electronic Surveillance [Docket No. 54] be denied, as moot.


Dated:  March 15, 2006                    s/Raymond L. Erickson
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

## NOTICE

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 31, 2006**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure

to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 31, 2006**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.